UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Hypertherm, Inc.

      v.                           Civil No. 05-cv-373-JD
                                       Opinion No. 2007 DNH 111

American Torch Tip Company


O R D E R

      Hypertherm, Inc. brought patent infringement claims against
American Torch Tip Company ("ATTC").  ATTC filed an amended
counterclaim, consisting of eleven counts, alleging federal
antitrust violations, state law claims, a claim under the Lanham
Act, and a claim under 35 U.S.C. § 292.  Hypertherm moved to
dismiss the amended counterclaim or in the alternative for
summary judgment.[1]  ATTC has responded.


Standard of Review

      The Federal Circuit has exclusive jurisdiction over appeals
in patent cases, and therefore, provides the applicable legal
standards for patent infringement claims.  See 28 U.S.C. § 1295.

---

      [1]The combined form of Hypertherm's motion is arguably in
violation of Local Rule 7.1(a)(1).  The combination of the two
motions complicated the task of addressing the issues raised.
ATTC did not object on that basis, however, and the court will
not strike the motion sua sponte after the parties have addressed
the issues in both contexts.

"When addressing a procedural issue, [the Federal Circuit's] standard of review is the same standard as would be applied by the pertinent regional circuit, unless the issue pertains to or is unique to patent law." Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., 479 F.3d 1330, 1335 (Fed. Cir. 2007).  The standards of review on a motion to dismiss and a motion for summary judgment are purely procedural matters, so that the First Circuit standards apply.  See Gen. Mills, Inc. v. Kraft Foods Global, Inc., 487 F.3d 1368, 1373 (Fed. Cir. 2007); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 480 F.3d 1335, 1339 (Fed. Cir. 2007).

To the extent Hypertherm and ATTC rely on materials extrinsic to the counterclaim, the motion is treated as one seeking summary judgment.  See Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).  ATTC argues, intermittently, that a lack of discovery precludes judgment on the counterclaim but failed to file an affidavit under Federal Rule of Civil Procedure 56(f).  See Kiman v. N.H. Dep't of Corrs., 451 F.3d 274, 282 n.7 (1st Cir. 2006).  The parties also agreed to certain discovery for purposes of responding to Hypertherm's motion.  See Document no. 85, filed March 3, 2007.  Therefore, a lack of discovery on issues raised in the counterclaim will not preclude dismissal or summary judgment.

2

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

In considering a motion to dismiss, the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor." Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006). The claimant, however, "must allege 'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct 1955, 1967 (2007). "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion

that factual allegations could be made that would justify drawing
such a conclusion." Cordero-Hernandez v. Hernandez-Ballesteros,
449 F.3d 240, 244 n.3 (1st Cir. 2006).


## Background

Hypertherm designs and manufactures plasma arc cutting
systems and replacement parts that are used for cutting carbon
steel and other metals.  The systems use a plasma torch with a
nozzle that projects a very high temperature ionized gas to cut
metal.  The components of the system are a power supply, gas
delivery, an arc-starting circuit, and a plasma torch.
Hypertherm also manufacturers replacement parts for the systems.

Hypertherm provides limited warranties on its plasma systems
with a warning that the warranty may be invalid if non-Hypertherm
replacement parts are used in the system.  ATTC is in the
business of supplying replacement parts for metal cutting
equipment, including plasma systems manufactured by Hypertherm.
ATTC and Hypertherm, therefore, are competitors in the business
of replacement parts for Hypertherm's systems.

In 1992, Hypertherm sued ATTC in federal court in Florida,
alleging patent infringement.  ATTC responded with a counterclaim
that included antitrust and state law claims.  ATTC later moved
to amend to add a claim under the Lanham Act.  The court granted

Hypertherm's motion for summary judgment on the counterclaim before addressing ATTC's motion to amend the counterclaim.  ATTC then filed a renewed motion to amend the counterclaim.  The case was tried at the end of March, 1994, and the jury returned a verdict on April 1, 1994, in favor of Hypertherm on the infringement claims and unfair competition claim.  ATTC and Hypertherm entered a settlement agreement, dated July 22, 1994.

## Discussion

Counts I through IV of the counterclaim are brought under the Sherman Act, alleging unlawful tying, monopoly levering, monopolization, and attempt to monopolize.  Count V is brought under the Lanham Act, alleging false advertising and unfair competition.  Count VI alleges tortious interference with contractual relations.  Count VII alleges tortious interference with prospective contractual relations.  Count VIII alleges common law unfair competition.  Count IX alleges a violation of New Hampshire Revised Statute Annotated ("RSA") § 356.  Count X alleges a violation of RSA 358-A.  Count XI alleges false marking under 35 U.S.C. § 292.

In its motion, Hypertherm mistakenly characterizes counts I through X as antitrust claims.  Because of that error, Hypertherm did not provide any developed argument to support summary

judgment on the Lanham Act claim or the state law claims in Counts V through X, until its reply.[2]  Therefore, Counts V through X are not considered in the context of the present motion.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

ATTC contends that the court has already ruled on the sufficiency of its counterclaim by allowing the amended pleading over Hypertherm's futility objection.  In support of that theory, ATTC argues that because the same standard applies in considering a futility objection and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the order allowing the amendment has become law of the case and establishes that the amended counterclaim states the claims alleged.  ATTC asserts that because Hypertherm raised the same defenses and objections to its motion for leave to amend to add the counterclaim that it raises in the pending motion to dismiss or for summary judgment, the motion is improper.

---

[2]A reply in support of a dispositive motion is limited to rebuttal of factual and legal arguments raised in the objection. LR 7.1(e)(1).  The moving party cannot raise new arguments and issues in a reply that it failed to address in the original motion.  See Fed. R. Civ. P. 56(c); Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999); United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993).

ATTC is mistaken.  A district court is always free to revise
an interlocutory ruling.  United States v. Tejeda, 481 F.3d 44,
57 (1st Cir. 2007); Harlow v. Children's Hosp., 432 F.3d 50, 55
(1st Cir. 2005).  To the extent Hypertherm moves for summary
judgment, ATTC's law of the case theory is inapposite.  In
addition, the law of the case doctrine does not bar a motion to
dismiss following a ruling granting a motion for leave to amend.
In re Cabletron Sys., Inc., 311 F.3d 11, 21 n.2 (1st Cir. 2002);
Ashcroft v. Dep't of Corrs., 2007 WL 1989265 at *6 (W.D.N.Y. July
6, 2007) ("The decision to grant leave to amend is in no way a
decision on the ultimate merits of the parties' claims.").
Further, the amorphous concept of "law of the case," even when it
applies, is discretionary and does not limit the court's power
"'to depart from a prior holding if convinced that it is clearly
erroneous and would work a manifest injustice.'"  Harlow, 432
F.3d at 55 (quoting Arizona v. California, 460 U.S. 605, 618
(1983)).  Therefore, the court is not bound, in considering
Hypertherm's motion, by the magistrate judge's ruling on the
motion to amend.

A.   Sherman Act Claims, Counts I – IV
ATTC's Sherman Act claims are that Hypertherm engaged in
illegal tying, monopoly levering, monopolization, and attempted

7

monopolization in its alleged activities related to warranties
for its products.  Hypertherm contends that ATTC failed to
properly allege the claims, cannot provide factual support for
its claims, and that the claims are barred by the parties' prior
litigation.  ATTC responds that its antitrust claims are valid
and that the prior litigation does not bar the counterclaim.

### 1. Res Judicata and Release

Hypertherm argues that the principles of res judicata and
release bar ATTC's antitrust claims, based on the parties' prior
litigation.  ATTC contends that neither principle applies because
the counterclaim in the prior case did not include the same
claims and the parties did not agree to a prospective release
from antitrust claims.  Hypertherm responds with a new argument
of laches, which is not considered as it was raised for the first
time in Hypertherm's reply.  Supra at footnote 1.

The Federal Circuit applies the law of the regional circuit
to issues of res judicata.  See, e.g., Media Techs. Licensing,
LLC v. Upper Deck Co., 334 F.3d 1366, 1369 (Fed. Cir. 2003).
"Under the federal law of res judicata, a final judgment on the
merits of an action precludes the parties from relitigating
claims that were raised or could have been raised in that
action."  Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st

Cir. 2005). For res judicata to apply, however, the claim must have actually been litigated in the first action. Torromeo v. Town of Fremont, 438 F.3d 113, 116–17 (1st Cir. 2006).

Although Hypertherm contends that ATTC made broad allegations about antitrust violations in the prior litigation, it has not shown that the claims alleged here were actually litigated or could have been raised in that case. Instead, it appears that ATTC attempted to add more specific allegations of illegal tying to its counterclaim, but its motion to amend was not granted. Therefore, the summary judgment on the counterclaim, apparently, did not address the claims that are brought here. In addition, because that litigation ended twelve years before ATTC raised its counterclaim here, it is unlikely that the same claims were or could have been raised there.

Alternatively, Hypertherm argues that its settlement agreement with ATTC in that case released it from liability for the antitrust claims brought here. When construing a settlement agreement, the Federal Circuit applies the law the parties have chosen as provided in a choice of law provision in the agreement. Gen. Mills, 487 F.3d at 1373. The parties' 1994 agreement states that it will be governed by New Hampshire law.

Under New Hampshire law, written agreements are interpreted by giving the language used "its reasonable meaning, considering

the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Czumak v. N.H. Div. of Developmental Servs., 923 A.2d 208, 213 (N.H. 2007). "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." Id. Although "New Hampshire law generally prohibits exculpatory contracts, [they will be enforced] if:  (1) they do not violate public policy; (2) the plaintiff understood the import of the agreement or a reasonable person in his position would have understood the import of the agreement; and (3) the plaintiff's claims were within the contemplation of the parties when they executed the contract." Dean v. MacDonald, 147 N.H. 263, 266-67 (2001).

In parts nine and ten of the parties' 1994 agreement, they mutually release each other from all claims, actions, suits, causes of action, and similar obligations which they "have or ever had against the released parties."  Based on its plain language, the agreement bars claims that the parties had against each other in 1994 or prior to that date.  The agreement does not suggest a prospective release of claims that would accrue in the future.  Given the lapse of twelve years between that agreement and the counterclaim brought in this action, it is unlikely that ATTC's claims here existed then.  To the extent the counterclaim

asserts claims that did exist in 1994, those claims are barred by the release in the 1994 agreement.

## 2. Statute of Limitations

The parties agree that a four-year statute of limitations applies to ATTC's Sherman Act claims and that Hypertherm's warranty policy was initiated long before the limitations period. See 15 U.S.C. § 15(b).  Hypertherm moves to dismiss ATTC's antitrust claims as barred under the statute of limitations because they allege only a continuation of actions that occurred long before the four-year limitation period.  ATTC responds that Hypertherm's argument "is simply wrong" based on ATTC's filings in support of its motion to amend.[3]

The continuing violation exception to the four-year statute of limitations has generally been limited to Sherman Act conspiracies.  Midwestern Mach. Co., Inc. v. Northwest Airlines, 392 F.3d 265, 270 (8th Cir. 2004).  The exception allows a claimant to bring an antitrust or monopoly claim that is based on a pre-existing illegal policy only when "the monopolist actively

---

[3]ATTC's stubborn reliance on its law of the case theory and arguments made in its previous filings undermine its position and have required the court to forage back to previously-filed documents to find ATTC's references.  In the future, ATTC would be well advised to include all pertinent and material matters in the filings under consideration.

reinitiates the anti-competitive policy and enjoys benefits from that action." Id. at 271 (interpreting Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 483-84 (1968)).  Stated in other terms, an "overt act" that causes injury within the limitations period supports a continuing violations theory. Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co., 111 F.3d 1427, 1444 (9th Cir. 1997); Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc., 728 F.2d 503, 509 (D.C. Cir. 1984).

The allegations in the amended counterclaim state that Hypertherm's antitrust activities were "[i]nitially implemented in 1988."  ATTC alleges that those activities occurred during the two-year term of the warranty on Hypertherm's cutting systems and phrases the allegations in the present tense.  Because the warranty lasts only two years, it would appear that new allegedly illegal activities occur each time a cutting system with a warranty is sold.  In the context of a motion to dismiss, taking the allegations as true and inferring in favor of ATTC, the complaint alleges at least some claims that are not time-barred. Whether the statute of limitations applies to bar any of ATTC's claims would be better addressed in a motion for summary judgment, which is not the context in which Hypertherm has raised the issue here.

### 3.  Antitrust Claims

Antitrust claims that are "based on procuring or enforcing a patent" and on "the antitrust consequences of patent tying" are governed by Federal Circuit law, while the law of the regional circuit applies to other elements of antitrust law.  Indep. Ink, Inc. v. Ill. Tool Works, Inc., 396 F.3d 1342, 1346 (Fed. Cir. 2005) (rev'd on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006)).  Illegal tying arrangements and unlawful monopolization that do not implicate conduct protected under the patent laws is governed by the law in the applicable regional circuit.  See, e.g., Monsanto Co. v. Scruggs, 459 F.3d 1328, 1338 (Fed. Cir. 2006).  The parties have not addressed the choice of law issue but do not rely exclusively on Federal Circuit precedent to support their arguments on the antitrust claims, suggesting that the antitrust claims do not pertain to patent issues that are governed by the Federal Circuit.

### a.  Illegal tying.

Section one of the Sherman Act prohibits contracts and conspiracy in restraint of trade.  15 U.S.C. § 1.  A tying arrangement, in which a seller "ties" the sale of a product to the purchase of another product to avoid competition on the tied product, is illegal under § 1.  Borschow Hosp. & Med. Supplies,

Inc. v. Cesar Castillo, Inc., 96 F.3d 10, 17 (1st Cir. 1996).  To
prove a per se tying claim, a party must prove:  "(1) the tying
and the tied products are actually two distinct products; (2)
there is an agreement or condition, express or implied, that
establishes a tie; (3) the entity accused of tying has sufficient
economic power in the market for the tying product to distort
consumers' choices with respect to the tied product; and (4) the
tie forecloses a substantial amount of commerce in the market for
the tied product."  Id.  (internal quotation marks omitted).
Alternatively, under the "rule of reason" theory, the claimant
must prove that the opponent's "conduct had an 'actual adverse
effect on competition.'"  Data Gen. Corp. v. Grumman Sys. Support
Corp., 36 F.3d 1147, 1179 n.54 (1st Cir. 1994).

ATTC asserts that Hypertherm has established an illegal tie
between its cutting systems and its own consumable parts for
those systems by threatening purchasers of Hypertherm systems,
after they purchased the systems, that if they do not use
Hypertherm consumable replacement parts, their warranties on the
cutting systems will be void.  The result of those threats, ATTC
contends, is that owners of Hypertherm systems are coerced into
buying Hypertherm replacement parts instead of ATTC parts.
Hypertherm responds that ATTC cannot prove an illegal tying

arrangement or that Hypertherm has sufficient economic power in the relevant market to distort consumers' choices.

"Antitrust law is designed to protect competition, not competitors." <u>SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.</u>, 188 F.3d 11, 26 (1st Cir. 1999).  Only tying arrangements that are anti-competitive violate the Sherman Act.  <u>Lee v. Life Ins. Co. of N. Am.</u>, 23 F.3d 14, 16 (1st Cir. 1994).  Mere threats by a seller to tie one product to another are not sufficient to show illegal tying arrangements.[4]  <u>Borschow</u>, 96 F.3d at 17.

Warranties offered with product sales are similar to insurance on the product and are generally used as instruments of competition.  <u>SMS Sys.</u>, 188 F.3d at 14.  When a purchaser of a product is free to forego the benefits of a warranty and buy service or replacement parts elsewhere, no tying arrangement exists.  <u>Marts v. Xerox</u>, 77 F.3d 1109, 1112 (8th Cir. 1996).  An

---

[4]ATTC relies on <u>Advance Bus. Sys. & Supply Co. v. SCM Corp.</u>, 415 F.2d 55, 64 (4th Cir. 1969), as authority for the proposition that threats are sufficient to support an illegal tying arrangement.  <u>Advance Bus. Sys.</u>, however, involved an allegedly illegal tying arrangement between a service contract and supplies for leased copiers, where the service contract was one of the tied products.  Here, Hypertherm provided the warranty with the cutting system, not as a separately purchased plan.  In addition, to the extent <u>Advance Bus. Sys.</u> supports a theory that threats are sufficient to support a tying claim, the First Circuit's opinion in <u>Borschow</u>, which more recently held that mere threats are not enough to show an illegal tie, is binding in this case.  <u>Id.</u> at 17.

illegal tying arrangement exists only when pricing or
availability limits the purchaser's choice for alternative
sources of the tied product.  <u>Id.</u> at 1113.

        ATTC offers some evidence that a number of owners of
Hypertherm systems heeded Hypertherm's threats that their
warranties would be void if they bought ATTC parts.  That
evidence, however, fails to show that those customers were not
free to choose to forego Hypertherm's warranty, included with the
sale of the cutting system, and buy ATTC or other replacement
parts.  <u>See</u> <u>Borschow</u>, 188 F.3d at 17; <u>Marts</u>, 77 F.3d at 1113.
ATTC's reference to memoranda and statements from 1992, that
suggest that Hypertherm intended to establish a tying mechanism,
are irrelevant as Hypertherm's conduct then precedes the claims
made here, and claims based on that conduct are barred by the
parties' 1994 settlement agreement.  Therefore, ATTC failed to
show a material factual issue as to whether Hypertherm's threats
to void its warranties if other replacement parts were used
constituted an illegal tying arrangement.


        b.  <u>Monopoly.</u>
        ATTC alleges three violations of Section 2 of the Sherman
Act:  monopoly levering, monopolization, and attempt to
monopolize.  "'The usual section 2 [Sherman Act] claim requires

                                16

monopoly or near monopoly power in some market, and a wrongful
exclusionary act designed to enhance such power in that market or
to achieve an improper advantage in another market.'" Arroyo-
Melecio v. Puerto Rican Am. Ins. Co., 398 F.3d 56, 66 (1st Cir.
2005) (quoting Town of Norwood v. New England Power Co., 202 F.3d
408, 420-21 (1st Cir. 2000)).  Hypertherm contends that ATTC
cannot prove that it has monopoly power in the relevant market.

     "[M]arket power consists of having sufficient economic
muscle to permit [the monopolist] to raise prices well in excess
of competitive levels without inducing customers to turn
elsewhere." SMS Sys., 188 F.3d at 16.  Defining the relevant
market is the first step in determining market power, which is
often based on a company's market share.  Id.

     ATTC alleges that Hypertherm controls 80% of the market for
high end plasma cutting systems and 75-80% of the replacement
parts market.  Hypertherm contends that ATTC has improperly
defined the relevant market which should be expanded to include
all reasonably interchangeable substitute products, such as oxy-
fuel, abrasive water jet, and laser systems, and products made by
foreign manufacturers.[5]  Hypertherm also asserts that ATTC lacks

_____

     [5]Although ATTC included allegations about Hypertherm's share
of the replacement parts market, the parties appear to agree that
in this case the relevant market is for cutting systems and not
the derivative market for replacement parts.  Cf. SMS Sys., 188

17

proof of the alleged 80% market share of even the high end
systems.

The record is not sufficiently developed to permit a
determination on summary judgment as to whether the relevant
market is limited to high end cutting systems, whether it is
global or limited to the United States, and whether Hypertherm's
share of the relevant market is monopolistic.  Therefore, that
issue remains unresolved.  Hypertherm has not shown that it is
entitled to summary judgment on ATTC's monopoly claims.

B.  <u>False Marking</u>

In Count XI, ATTC alleges that Hypertherm is violating 35
U.S.C. § 292 by including on packaging of its replacement parts
patent numbers that do not apply to those parts.  "[W]hen an
unpatented article is marked with the word 'patent' or any word
or number that imports that the article is patented, and such
marking is for the purpose of deceiving the public, the fine
[imposed by § 292] is invoked."  <u>Clontech Labs., Inc. v.</u>
<u>Invitrogen Corp.</u>, 406 F.3d 1347, 1352 (Fed. Cir. 2005).
Hypertherm moves to dismiss ATTC's mis-marking claim on the
ground that ATTC has not alleged an intent to deceive the public.

---

F.3d at 17 (addressing issue of whether foremarket or aftermarket
was relevant for determining market power).

No allegation of intent to deceive the public is stated in
Count XI.  In its objection, ATTC cites allegations earlier in
the counterclaim to support its mis-marking claim.[6]  ATTC
alleged:

> Hypertherm has engaged in patent misuse by falsely
> marking packages of consumables with patent numbers
> that do not cover the product in the packages.  On
> information and belief, the mis-marking was to
> intimidate and dissuade competitors in the replacement
> market for consumables, such as ATTC, from attempting
> to copy the products or under take a design-around of
> them, thereby adversely affecting competition in that
> market.  The mis-marking could also have been for the
> purpose and with the intent of leaving the false
> impression with potential customers of Hypertherm's
> products, that Hypertherm's products are protected by
> many patents, indeed many more than those of any of its
> competitors, and, therefore, its products must be more
> innovative, exclusive, and desirable as a result.

Amended Answer ¶ 83.  Several paragraphs later, ATTC alleged that
"Hypertherm has been taking all of the foregoing actions with
specific intent, in order to maintain and/or attain monopoly
power in the sale of consumables to the replacement markets."
Id. ¶ 88.

Intent to deceive the public for purposes of § 292 requires
"a state of mind arising when a party acts with sufficient
knowledge that what it is saying is not so and consequently that
the recipient of its saying will be misled into thinking that the

---

[6]ATTC cites paragraphs 34 and 39 which do not contain the
allegations represented.  Review of the counterclaim shows that
ATTC intended to cite paragraphs 83 and 88.

statement is true."  Clontech, 406 F.3d at 1352.  Proof of
misrepresentation "coupled with proof that the party making it
had knowledge of its falsity is enough to warrant drawing the
inference that there was fraudulent intent."  Id. (internal
quotation omitted).  "[I]n order to establish knowledge of
falsity the plaintiff must show by a preponderance of the
evidence that the party accused of false marking did not have a
reasonable belief that the articles were properly marked (i.e.
covered by a patent)."  Id. at 1352-53.

       Although ATTC did not allege that Hypertherm knew that it
was falsely marking its packages of replacement parts, that may
be inferred from the purposes ATTC alleged for marking the
packages.  Whether ATTC can prove a false marking claim should be
addressed, if appropriate, through summary judgment, rather than
in a motion to dismiss.


                           Conclusion

       For the foregoing reasons, Hypertherm's motion to dismiss or
in the alternative for summary judgment (document no. 43) is
granted in part and denied in part.  Summary judgment is granted
in Hypertherm's favor on Count I of the counterclaim.  The motion
is otherwise denied.  ATTC's request for costs is denied.


                              20

The tone of the parties' filings for purposes of the motion to dismiss or in the alternative for summary judgment does not demonstrate the level of civility that the court expects of litigants in this district.  Such conduct is not persuasive and does little to advance a party's cause.  The court expects a more professional approach from counsel in future filings.


SO ORDERED.

Joseph A. DiClerico, Jr
United States District Judge

September 11, 2007

cc:  Jacob K. Baron, Esquire
     Steven M. Bauer, Esquire
     Seth M. Cannon, Esquire
     Joseph A. Capraro, Jr., Esquire
     Myriah M. Gambrell-Glenn, Esquire
     Jamie N. Hage, Esquire
     Nicholas K. Holmes, Esquire
     Jonathan A. Lax, Esquire
     Barbara L. Mandell, Esquire
     Richard C. Nelson, Esquire
     W. Scott O'Connell, Esquire
     Jeremy P. Oczek, Esquire
     Allan J. Sternstein, Esquire
     Adam B. Strauss, Esquire