```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Hypertherm, Inc.

    v.                               Civil No. 05-cv-373-JD

American Torch Tip Company


## SEALED ORDER

American Torch Tip Company ("ATTC") moves for reconsideration, challenging the order issued on September 11, 2008, that granted summary judgment to Hypertherm, Inc. on ATTC's affirmative defenses of laches, estoppel, acquiescence, waiver, and unclean hands. ATTC argues that the court failed to consider material evidence, misunderstood the subject matter of the parties' 1996 litigation, and misunderstood ATTC's interrogatory answer pertaining to the bases of its affirmative defenses. Hypertherm objects to reconsideration.


## Discussion

"A court appropriately may grant a motion for reconsideration where the movant shows a manifest error of law or newly discovered evidence" or "if the court has patently misunderstood a party or has made an error not of reasoning but of apprehension." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 81-82 (1st Cir. 2008) (internal quotation marks omitted); see

also Palmer v. Champion Mtg., 465 F.3d 24, 30 (1st Cir. 2006). Under that standard, "[a] motion for reconsideration does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15-16 (1st Cir. 2006). Reconsideration is also not an appropriate means to reargue an issue that the court has addressed. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 139 (1st Cir. 2006).

A.  Exclusion of 1996 Letters

The court ruled that ATTC was barred, pursuant to Federal Rule of Civil Procedure 37(c)(1), from using two letters dated in October of 1996 to support its affirmative defenses because ATTC failed to disclose that evidence in response to Hypertherm's interrogatory. ATTC contends that the court mistakenly interpreted its interrogatory answer to state that its defenses were based on communications beginning in 1998 or 1999 when the answer actually stated that the defenses were based on communications "since at least 1998 or 1999." ATTC also contends that the letters did not introduce a new theory because it had

relied on the parties' communications to support its affirmative defenses.

ATTC does not dispute, however, that it failed to disclose the 1996 letters as the basis for its affirmative defenses in response to Hypertherm's interrogatory. As the court ruled, having referred Hypertherm to communications since at least 1998 or 1999, ATTC was required to supplement its answer to include the 1996 letters. ATTC failed to do so, and the letters were properly excluded.

B.  Overwhelming Evidence

ATTC contends that the court overlooked overwhelming evidence that supported its affirmative defenses. Although ATTC disputes the court's ruling that excluded the 1996 letters, it also has reformulated its defenses to operate without reliance on the letters. A motion for reconsideration is not the appropriate vehicle for new arguments.

In its opposition to Hypertherm's motion for summary judgment, ATTC relied on the October 1996 letters, its assertion that Hypertherm had the opportunity to test ATTC electrodes in 1997, the requirement under the parties' 1997 settlement agreement that ATTC would send pertinent catalog pages to Hypertherm, and a letter from Hypertherm in March of 1999 that

accused ATTC of infringing a different patent. ATTC characterized the parties' interactions during this period as follows: "In summary, Hypertherm was silent on the issue of the '988 Patent from October 8, 1996, when it first accused ATTC of infringing the '988 Patent, until the time period before it filed the instant action in 2005." ATTC's Opposition, dkt. no. 249. ¶ 6. As Hypertherm pointed out, ATTC's version of events overlooked the parties' patent infringement litigation beginning in 1996 that included claims of infringement of the '988 patent.

ATTC addressed the 1996 litigation in its motion for partial summary judgment on its equitable estoppel defense. ATTC argued that Hypertherm misleadingly communicated that it did not intend to enforce the '988 patent when it failed to respond to ATTC's October 1996 letter, when Hypertherm tested Modified Electrodes during the 1996 litigation but did not accuse them of infringement, when the 1997 settlement did not require ATTC to make further changes in its Modified Electrodes, and when based on review of catalog pages Hypertherm accused ATTC parts of infringing the '095 patent but not the '988 patent. In its motion for reconsideration, ATTC focuses more on the litigation and less on the October 1996 letters.

In the 1996 infringement action, Hypertherm accused ATTC and its related company, Plasma Components, of infringing the '988

4

patent, accusing, among others, parts numbered 120111 and 120112. Part numbers 120111 and 120112 were referenced in the October 1996 letters.  In the parties' 1997 settlement agreement, part numbers 120111 and 120112 were included in the list of parts that would be destroyed.  The settlement agreement also provided, in pertinent part:

> With respect to non-genuine replacement parts which Torch Companies [ATTC and Plasma] offer for sale as "alternatives" to Hypertherm patented parts (e.g., 120111A, 120112A, 101611 and 120090), Torch Companies may use the Hypertherm part number for these and future "alternative" parts on the condition that the Hypertherm part number must be combined with the suffix "ATTC" for ATTC parts or "PCI" for Plasma parts for such non-genuine parts   . . . .[1]

Settlement ¶ 5.

Therefore, the record shows that within weeks of the October 1996 letters Hypertherm brought an infringement action under the '988 patent, citing the same part numbers that were referenced in the letters.[2]  ATTC's description of the parties' interactions, that a "nearly nine year silence – punctuated with Hypertherm's test of the Design-Around Electrodes and Hypertherm's accusations

---

[1] In paraphrasing paragraph 5 of the settlement agreement in the previous order, the court merely noted the reference to the same or similar parts but did not construe or interpret the meaning of the agreement.

[2] ATTC now says that the infringement action was filed before Hypertherm received its letter.  In any case, the litigation demonstrated Hypertherm's intent to defend the '988 patent.

that they violated a different patent – misled ATTC into believing its Design-Around Electrodes complied with the '988 Patent," is not an accurate picture of events between 1996 and 2005.

ATTC now contends that the 1996 litigation supported its belief that its "Design Around" electrodes, which it also calls "Modified Parts," successfully avoided infringing the '988 patent. ATTC refers to "Original Parts" and "Modified Parts," meaning, apparently, that the parts addressed in the 1996 litigation were "Original Parts" and parts manufactured thereafter were "Modified Parts." ATTC asserts that the Original Parts with part numbers 120111 and 120112 were destroyed as required by the settlement agreement. It argues that based on the provision in paragraph 5 of the settlement agreement, it believed that its Modified Parts did not infringe the '988 patent because they used larger hafnium inserts and that it further assumed that "other electrodes with larger hafnium inserts" also would not infringe the '988 patent. ATTC further contends that because Hypertherm did not bring an infringement action challenging the Modified Parts until 2005, it is entitled to affirmative defenses of laches, acquiescence, waiver, and unclean hands.

With respect to ATTC's estoppel defense, it fails to show that Hypertherm's actions or inactions were misleading. ATTC apparently made assumptions based on Hypertherm's inaction. Although inaction in some circumstances may constitute misleading conduct that would support an estoppel defense, ATTC did not provide a factual background to support that inference. See Scholle Corp. v. Blackhawk Molding Co., Inc., 133 F.3d 1469, 1471 (Fed. Cir. 1998).

ATTC also asserts that under the 1997 settlement agreement, Hypertherm reviewed its revised catalog pages "at least as early as March of 1998." Based on the catalog review, ATTC argues that Hypertherm had notice of its Modified Parts but did not accuse them of infringing the '988 patent. Instead, Hypertherm accused a modified electrode, part number 120112ATTC, of infringing the '095 patent. Hypertherm counters that ATTC acknowledges the catalog did not include the part dimensions that are critical to determining infringement of the '988 patent. As a result, the catalog review process does not create a disputed fact as to whether Hypertherm knew after the 1996 litigation but long before 2005 that the accused parts infringed the '988 patent.

Even based on ATTC's revised and augmented version of pertinent events, it has not shown a material factual dispute that would avoid summary judgment. ATTC relies on its

7

unsupported interpretations of the parties' settlement agreement and the absence of infringement accusations under the '988 patent as evidence of laches, acquiescence, waiver, and unclean hands. ATTC's complacence, however, was based on its unsupported assumptions about what would avoid infringement. The parties' interactions after their 1997 settlement do not show the kind of extended delay that could raise a factual issue on the defenses of laches and acquiescence. As noted previously, ATTC offered no evidence of waiver or of unclean hands.

C.  Summary

The 1996 letters were properly excluded due to ATTC's failure to disclose them in response to Hypertherm's interrogatory. In the absence of the 1996 letters, ATTC's theory supporting its defenses fails. Even if the letters were considered however, intervening events do not support the affirmative defenses ATTC asserts. Therefore, ATTC has not shown a factual dispute that would avoid summary judgment on its defenses.

Conclusion

For the foregoing reasons, the defendant's motion for reconsideration (document no. 323) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 17, 2008

cc:  Jill C. Anderson, Esquire
     Jacob Baron, Esquire
     Steven Abuer, Esquire
     Lucas Blower, Esquire
     Seth Cannon, Esquire
     Joseph Capraro, Jr., Esquire
     Christopher Carney, Esquire
     Jeffery Cross, Esquire
     Joseph Dattilo, Esquire
     Ami Gandhi, Esquire
     Maia Harris, Esquire
     Marc Kallish, Esquire
     Rhett Krulla, Esquire
     Jonathan Lax, Esquire
     Richard Nelson, Esquire
     W. Scott O'Connell, Esquire
     Jeremy Oczek, Esquire
     Richard Rochford, Jr., Esquire
     David Ruoff, Esquire
     John Skeriotis, Esquire
     Benjamin Stern, Esquire
     Wayne Tang, Esquire