UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Hypertherm, Inc.

    v.                          Civil No. 05-cv-373-JD

American Torch Tip Company

SEALED ORDER

ATTC has filed three motions challenging Hypertherm's proof
of damages.  Although ATTC wrote in the caption of its motions,
"Oral Argument Requested," it failed to provide the required
written statement in support of its request.[1]  Therefore, the
motions are addressed without a hearing.

Legal Standard

A patentee is entitled to compensatory damages of at least
reasonable royalties for infringement.  35 U.S.C. § 284.
"Despite the broad damages language of § 284, patentees tend to
try to fit their damages cases into the 'lost profits' framework,
or else fall back on the statutory grant of a reasonable
royalty."  Mars, Inc. v. Coin Accpetors, Inc., 527 F.3d 1359,

---

[1]As the court has previously explained, under the local
rules of this district, motions are decided without oral
argument, although argument may be permitted based on a written
statement outlining the reasons why it may provide assistance to
the court.  LR 7.1(d).

1366 (Fed. Cir. 2008).  "'To recover lost profits damages, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer.'"  Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1371 (Fed. Cir. 2006) (quoting Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995)).  Lost profits may be proven under the "Panduit test" by showing "(1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) the manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made."  Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1373 (Fed. Cir. 2008).

One component of lost profits may be an amount of loss due to convoyed sales.  "A 'convoyed sale' refers to the relationship between the sale of a patented product and a functionally associated non-patented product."  Am. Seating Co. v. USSC Group, Inc., 514 F.3d 1262, 1268 (Fed. Cir. 2008) (internal quotation marks omitted).  "A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit."  Id.  The "convoyed sales" theory does not extend to items

2

with no functional relationship to each other that are sold together only as a convenience or for a business advantage.  Id.

## Background

Under the scheduling order in this case, the deadline for supplementing interrogatory answers was January 29, 2007.  All fact discovery closed on April 16, 2007.  Expert reports were due on May 14, 2007, and the deadline for rebuttal expert reports was June 14, 2007.  All discovery, including depositions of all experts, was to be completed by June 25, 2007.

In the course of discovery, ATTC propounded Interrogatories 11 and 12 on damages, asking Hypertherm to identify all damages associated with the case, with an explanation of the damages calculation, and to identify and explain the proper measure of damages, including the type of damages, the calculation, all persons knowledgeable of the basis for the damages claimed, and all facts and documents on which Hypertherm relied.  Hypertherm responded with objections that its investigation into damages was not complete and would include expert opinions.  Hypertherm also stated that it was entitled to at least a reasonable royalty, lost profits, and up to treble damages for willful infringement.

ATTC asked Hypertherm, in Requests 56 and 57, to produce all documents relied on to calculate infringement damages and

3

documents to show Hypertherm's manufacturing costs and profit on its products covered by the patents in suit.  Hypertherm objected to the extent the requested documents were protected by privileges and stated that it would produce non-privileged documents responsive to the requests.  On January 22, 2007, Hypertherm produced documents to support its claim for lost profits.

On January 29, 2007, Hypertherm provided answers to Interrogatories 11 and 12.  Hypertherm objected in part on the grounds that it had not concluded its investigation into damages and that its claims would likely include expert analysis and opinions that had not been exchanged at that time.  Hypertherm also stated that its damages amounted to at least a reasonable royalty based on sales by ATTC of infringing products, that it sought lost profits, and that it was entitled to enhanced compensatory damages for willful infringement.

Counsel for both parties continued to discuss discovery matters.  On April 12, 2007, counsel for ATTC wrote to Hypertherm's counsel to confirm their agreement that Hypertherm's counsel would be permitted to inspect documents at ATTC on April 17, 2002.  The letter refers to documents "relating to underlying sales invoices that were reflected in the original sales documents produced by [ATTC]."  Counsel also stated that if

4

copies of the documents were needed, they would discuss a procedure for providing them.  The inspection occurred as agreed.

By agreement with ATTC, Hypertherm deposed three of ATTC's witnesses, William Shriver, Jeff Walters, and Jack Walters, on April 17 and 18, 2007.  Hypertherm asked the witnesses questions related to damages under a convoyed sales theory.  On April 20, 2007, Hypertherm produced cost information in spreadsheets copied onto CDs, and that information was updated on May 17.  ATTC produced its updated damages information on May 23, 2007.

A series of emails between counsel in early May documents their efforts to get copies of invoices and sales summaries from ATTC following the inspection on April 17.  Additional emails show that copies of requested documents were sent on May 10, 2007.  On May 11, Hypertherm provided supplemental answers to the damages interrogatories in which it added:  "Hypertherm is permitted the recovery of damages based on the sale of convoyed items which are not accused of infringement themselves, but which are sold by ATTC along with the infringing products."  ATTC provided supplemental interrogatory answers to Hypertherm on May 15, 2007, about accused products that ATTC contended did not infringe the asserted patents.  ATTC deposed Hypertherm's witness designated under Federal Rule of Civil Procedure 30(b)(6), Evan Smith, on May 18, 2007, and addressed Hypertherm's convoyed sales

theory during the deposition.

On May 24, 2007, Hypertherm served ATTC with the report of its expert witness on damages, Christopher C. Barry.[2]  In his report, Barry addressed convoyed sales and calculated damages including losses due to convoyed sales.  Barry then prepared an updated report, dated June 13, 2007, which Hypertherm represents was served on ATTC the same day.  The next day, Barry submitted a supplemental report with corrections to his previous report. ATTC filed a "notice" that Barry's damages report was inconsistent with Hypertherm's defense to ATTC's antitrust counterclaim but did not otherwise challenge Barry's reports.  On June 18, Hypertherm provided ATTC with additional supplemental responses to the damages interrogatories, stating:  "Hypertherm incorporates by reference herein the expert report of Christopher C. Barry dated May 24, 2007 and supplemental report dated June 14, 2007."  ATTC provided supplemental answers to some of Hypertherm's interrogatories on June 13, 2007, based on its technical expert witness's report and in reaction to Hypertherm's technical expert witness's report.

ATTC provided the report of its damages expert, Steven J.

---

[2]Hypertherm first says that it served the report on May 24 and then refers to the report by the date of May 27, 2008.  The report filed as Exhibit 8 with Hypertherm's objection, filed with the sealed version (doc. # 420) is dated May 24, 2007.

Shapiro, on June 25, 2007.  Shapiro addressed the issue of
convoyed sales and challenged Barry's explanation of the theory,
the application of convoyed sales to the circumstances of the
case, and Barry's calculations that included losses due to
convoyed sales.  Hypertherm provided updated and corrected cost
spreadsheets on August 10, 2007.  ATTC deposed Barry on August
14, 2007, and questioned him about convoyed sales and lost
profits damages.

Discussion

ATTC moves to preclude Hypertherm from using evidence of
convoyed sales and lost profits in support of its damages claims
on the ground that Hypertherm did not timely disclose related
evidence.  ATTC also moves to bar Hypertherm's expert witness,
Christopher C. Barry, from testifying about convoyed sales,
contending that Barry does not meet the requirements of Federal
Rule of Evidence 702.  Hypertherm objects to the motions.

I.  Evidence of Convoyed Sales

ATTC contends that Hypertherm did not disclose, within the
discovery deadline, that it was claiming damages based on a
convoyed sales theory.  For that reason, ATTC argues that
Hypertherm is precluded, under Federal Rule of Civil Procedure

7

37(c), from using evidence of convoyed sales to prove its infringement damages.  Hypertherm responds that it provided timely supplementation of its interrogatory answers to include the convoyed sales theory and that the delay was harmless.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 26(e) requires parties to supplement their interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

Ordinarily, the sanction for a party's failure to abide by the requirements of Rule 26(a) and (e) is mandatory preclusion of the undisclosed evidence.  Santiago-Diaz v. Laboratorio Clinico Y de Referencia del Estate & Sara Lopez, 456 F.3d 272, 276 (1st Cir. 2006).  The purpose of Rule 37(c)(1) is to enforce discovery deadlines in case management orders.  Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 191 (1st Cir. 2006).  Therefore, parties who ignore case management deadlines do so at their own

8

peril.  <u>Santiago-Diaz</u>, 456 F.3d at 277.

In this case, the record shows that counsel for the parties mutually agreed to ignore the case management deadlines for supplementing interrogatories and completing discovery on damages issues, including the depositions of expert witnesses. Hypertherm supplemented its interrogatory answers within the time frame both sides were using for that purpose.[3]  ATTC cannot expect the court to enforce a deadline, for ATTC's benefit, that it agreed with Hypertherm to ignore.  Under these circumstances, Hypertherm has shown that its late disclosure was substantially justified.

In addition, ATTC's damages expert was notified of the convoyed sales damages theory before he submitted his report, and he addressed the theory in his report.  ATTC deposed Hypertherm's expert, Barry, about the convoyed sales damages theory and the

_____

[3]ATTC argues that Hypertherm must be precluded from using convoyed sales and lost profits evidence because ATTC was precluded from using undisclosed evidence of sales of the Whitney electrode and from relying on a new affirmative defense theory for purposes of summary judgment.  ATTC, however, never provided supplemental interrogatory answers or any other means to disclose its new evidence and theory.  Instead, it first disclosed the sales evidence more than a year after the close of fact discovery by submitting the evidence in support of its objection to Hypertherm's motion for summary judgment.  ATTC first introduced its theory that its affirmative defenses were based on earlier and different communications in its motion for summary judgment. Therefore, the circumstances are not analogous.

evidentiary support for it.  Damages discovery, including the
issue of convoyed sales, was concluded by the middle of August of
2007, eighteen months ago.  Although ATTC now argues that Barry's
deposition responses were inadequate, it did nothing to remedy
any discovery deficiencies at the time.

ATTC also argues that Hypertherm's supplemental
interrogatory answers were incomplete due to a lack of evidence
of convoyed products.  In the intervening year and a half since
Hypertherm disclosed the convoyed sales theory, ATTC did not move
to compel more complete answers or otherwise indicate a need for
supplemental information.  See Fed. R. Civ. P. 37(a)(3)(B)(iii).
Instead, ATTC accepted the supplemental answers and responded
with its own damages expert's report.

ATTC asserts that Hypertherm's delay in disclosing its
convoyed sales damages theory caused prejudice because "ATTC was
denied any reasonable opportunity to inquire as to the factual
basis for such a theory during the fact discovery period."  The
record belies ATTC's assertion.  By mutual agreement, the parties
did not abide by the scheduling deadlines.  ATTC did respond to
the convoyed sales theory and did not indicate that it required
more time or additional discovery to address the theory.

Under the circumstances presented here, Hypertherm's late
disclosure of its convoyed sales damages theory and evidence was

10

both substantially justified and harmless.  Therefore, ATTC's
motion to preclude evidence of convoyed sales is denied.


II.  Motion to Preclude Evidence of Lost Profits

ATTC also moves to preclude Hypertherm from presenting
evidence of lost profits, based on a similar theory that
Hypertherm did not disclose information to support lost profits
damages until after the close of fact discovery.  In addition,
ATTC contends that Hypertherm's document production was
inadequate because the 600 pages produced were virtually
unreadable.  ATTC contends that it "was denied any reasonable
opportunity to conduct critical fact discovery on one of the four
elements that Hypertherm needs to prove in order to recover lost
profits damages."

Hypertherm responds that, as explained above, the parties
agreed to provide damages discovery after the scheduling
deadline, that they both provided discovery materials after the
deadline, and that ATTC never objected to the discovery as being
untimely at that time or at any time in the intervening eighteen
months.  Hypertherm also contends that ATTC used the damages
information during the deposition of Hypertherm's expert witness
in August of 2007 and did not mention then or at anytime since
then that the quality of the documents was unacceptable.

11

As is discussed in the context of the evidence of convoyed sales, ATTC acquiesced in the late discovery disclosures and cannot now seek to enforce deadlines that it failed to enforce or abide by at the time.  Hypertherm's late disclosures are both substantially justified and harmless.

To the extent ATTC now argues that the documents Hypertherm produced were inadequate, it should have requested better copies or different identification from Hypertherm when they were produced.  If those requests were unavailing, ATTC's remedy was to move to compel production or other discovery, which it failed to do.  Therefore, ATTC's motion is denied.

III.  Motion to Exclude Testimony by Hypertherm's Damages Expert

ATTC argues that the opinions of Hypertherm's damages expert about convoyed sales do not meet the reliability requirement of Federal Rule of Evidence 702.  Hypertherm objects, contending that ATTC's motion is untimely and that Barry's opinion on damages due to convoyed sales is reliable.

A.  Timeliness of Motion

The scheduling order in this case required the parties to file motions challenging expert testimony forty-five days before

12

trial.  Trial was scheduled for February 18, 2009.[4]  Therefore, forty-five days prior to trial was January 5, 2009.  <u>See</u> Fed. R. Civ. P. 6(a).  ATTC filed its motion challenging Barry's testimony on January 16, 2009, along with its motions in limine. As such, the motion is untimely.  Under the circumstances, however, it appears that the delay is harmless.

B.  <u>Reliability of Testimony</u>

Expert witnesses in patent cases must meet the requirements of Rule 702, as in all cases.  <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1360 (Fed. Cir. 2008).  Under Rule 702, expert opinion testimony is allowed "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  "[A]n expert need not have obtained the basis of his opinion from personal perception."  <u>Monsanto Co. v. David</u>, 516 F.3d 1009, 1015 (Fed. Cir. 2008).  Therefore, an expert's opinion need not be based on

---

[4]Although the trial date has been continued to April 27, 2009, all of the deadlines counted from the trial date or the final pretrial conference date are based on the February 18, 2009, trial date.  The continuance of the trial does not extend the time for the parties to file pretrial motions.

firsthand knowledge and may rely, instead, on facts, tests, reports, and other underlying data prepared by others.  Id.  A challenge to the reliability of an expert's opinion requires an inquiry into the principles and methodology used by the expert, not on the ultimate conclusions.  Liquid Dynamics, Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1221 (Fed. Cir. 2006).

ATTC contends that Barry's opinions on damages from convoyed sales are unreliable because no factual basis exists to show that the products he lists meet the standard for convoyed sales and because Barry lacks the expertise to determine whether products are convoyed or not.  ATTC points to deposition testimony from Hypertherm's Rule 30(b)(6) witness, Evan Smith, which ATTC interprets to mean that some products are sold together merely for convenience or business advantage.  ATTC also challenges the methods Barry used to determine the number of convoyed sales.

Hypertherm responds that Barry is not providing opinions as to which products are functionally related and sold together, constituting convoyed sales.  Instead, Barry calculated damages, based on data provided to him about convoyed sales.  Therefore, Hypertherm is not offering Barry to provide opinions about what products meet the standard for convoyed sales.

At trial, to support its convoyed sales damages theory, Hypertherm first will have to prove that the convoyed sales

14

referenced in Barry's opinions occurred.  That is, Hypertherm

will have to show that certain non-infringing products sold by

ATTC are functionally related to ATTC's infringing products and

are sold together in convoyed sales.  Barry will not be permitted

to present any opinion as to which product sales constitute

convoyed sales.  His testimony will be limited to the calculation

of damages due to convoyed sales, based on Hypertherm's proof

through other witnesses that the specific convoyed sales, which

form the factual basis of Barry's opinion, occurred.


                         Conclusion

     For the foregoing reasons, the defendant's motions to

exclude evidence of convoyed sales (doc. no. 399) and to exclude

evidence of lost profits (document no. 423) are denied.  ATTC's

motion to exclude expert evidence on convoyed sales (document no.

424) is granted to the extent that Christopher Barry will not be

permitted to give his opinion about which products constitute

convoyed sales, and otherwise the motion is denied.

     SO ORDERED.

                              _/s/ Joseph A. DiClerico, Jr._
                              Joseph A. DiClerico, Jr.
                              United States District Judge


February 20, 2009

cc:  Benjamin Stern, Esq.
     Colin Cabral, Esq.
     Jill Anderson, Esq.

                              15

Jacob Baron, Esq.
Steven Bauer, Esq.
Lucas Blower, Esq.
Seth Cannon, Esq.
Joseph Capraro, Jr., Esq.
Christopher Carney, Esq.
Jeffery Cross, Esq.
Joseph Dattilo, Esq.
Ami Gandhi, Esq.
Maia Harris, Esq.
Marc Kallish, Esq.
Rhett Krulla, Esq.
Jonathan Lax, Esq.
Richard Nelson, Esq.
W. Scott O'Connell, Esq.
Jeremy Oczek, Esq.
Richard Rochford, Jr., Esq.
David Ruoff, Esq.
John Shapiro, Esq.
John Skeriotis, Esq.
Wayne Tang, Esq.